**FILED**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

AUG 2 1 2003

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| | |
|---|---|
| JOHN W. PETERSON,<br>on behalf of himself and<br>others similarly situated<br>119 Nautical Cove,<br>Stafford, VA 22554<br><br>    Plaintiff,<br><br>v.<br><br>THE ROYAL KINGDOM OF<br>SAUDI ARABIA<br>SERVE: [To Be Dispatched By<br>    The Clerk of Court]<br>    Ministry of Foreign Affairs<br>    Nasseriya Street,<br>    Riyadh, Saudi Arabia 11124<br><br>and<br><br>THE GENERAL<br>ORGANIZATION OF SOCIAL<br>INSURANCE, an instrumentality<br>of The Kingdom of Saudi Arabia,<br><br>SERVE: [To Be Dispatched By<br>    The Clerk of Court]<br>    Ministry of Foreign Affairs<br>    Nasseriya Street,<br>    Riyadh, Saudi Arabia 11124<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Civil Action No. _____<br><br><br>   CASE NUMBER  1:03CV01771<br><br>   JUDGE: John D. Bates<br><br>   DECK TYPE: Contract<br><br>   DATE STAMP: 08/21/2003 |

## COMPLAINT

### I.  INTRODUCTION

1.  PLAINTIFF, John W. Peterson, and class members, by way of this Complaint, seek

-1-

class relief, injunctive relief, refunds, and damages against the Defendants, the Royal Kingdom of Saudi Arabia ("Saudi Arabia," "Saudi Government" or the "Kingdom") and the General Organization for Social Insurance ("GOSI"), an instrumentality of the Kingdom (collectively referred to herein as "Defendants"). As set forth in more detail below, Plaintiff files this action because of Defendants: (i) unlawful expropriation of Plaintiff's property rights, without just, adequate or prompt compensation, in violation of international law; (ii) arbitrary and discriminatory treatment of foreign workers with regard to their property in Saudi Arabia; (iii) breach of contract; (iv) unjust enrichment, and (v) conversion of Plaintiff's property and rights in property.

Upon information and belief, Plaintiff alleges the following:

2.     This case involves the property rights of thousands of American citizens and/or residents who played a key role in the construction and development of modern day Saudi Arabia.

3.     In a span of approximately seventy years, Saudi Arabia has evolved from a desolate desert Kingdom to a viable nation with a network of highways connecting large cities with office towers and apartment buildings dotting the skyline. Electricity, water and other utilities make modern day commerce and transportation a way of life, replacing the nomadic existence of most of Saudi Arabia prior to its modernization. Additionally, Saudi Arabia is serviced by the modern and major airport facilities in the world.

4.     The discovery of oil and its importance to the rest of the world enabled the Saudis to obtain the capital to afford the best that money could buy. In bringing their country into the 20th century, the Saudis were forced to rely upon a large foreign workforce. Much of the labor was highly skilled-- *i.e.*, engineers, architects, consultants and contractors from Western countries like the United States, the United Kingdom, France, Italy, Canada and Germany.

5.     Many of these non-Saudis were actively recruited by both the Saudi public and private

sectors with promises of high pay, pension benefits, housing, use of automobiles, health care and

travel to and from Saudi Arabia and their country of origin. After all, living and working in Saudi

Arabia, particularly during the period relevant to this Complaint, involved confronting a very strict

society that would impinge on the life-style of someone used to the freedom offered in the West.

## II.     PARTIES

6.     Plaintiff John W. Peterson is an adult citizen of the Commonwealth of Virginia. He

resides at 119 Nautical Cove, Stafford, VA 22554.

7.     Over a period of eleven years, Mr. Peterson worked for a number of companies

located in Saudi Arabia. Between 1979 through 1990, Mr. Peterson was employed by various

engineering and construction companies, including but not limited to Frank E. Basil Engineering

Company ("Basil Engineering") and Fluor Daniel Inc. ("Fluor Daniel").

8.     Defendant, the Royal Kingdom of Saudi Arabia, is a foreign state, as that term is

defined in 28 U.S.C. § 1602, *et seq.* (the Foreign Sovereign Immunities Act of 1976). Saudi Arabia

maintains a diplomatic presence in the United States, through its Embassy ("Saudi Embassy"),

located in Washington, D.C.

9.     Defendant General Organization for Social Insurance, or "GOSI," is an agency or

instrumentality of the Kingdom of Saudi Arabia. Defendant Saudi Arabia established GOSI by

Royal Decree No. M/22, dated November 15, 1969 (the "1969 Royal Decree") [as amended by Royal

Decree M/33, dated November 29, 2001].

10.     GOSI is an insurance program, which provides compensation to certain categories of

workers resulting from employment injuries, occupational diseases, disability, and death. GOSI also

provides retirement benefits. GOSI has its headquarters in Riyadh, Saudi Arabia.

11.     Defendant Saudi Arabia established GOSI to promote foreign commerce and attract badly needed foreign workers to Saudi Arabia. Wholly-owned government corporations and other domestic and international corporations and organizations used GOSI as a marketing tool to attract/entice foreign workers to Saudi Arabia.

12.     GOSI invests and reinvests employer and employee contributions to its fund in various domestic corporations, organizations and international banks.

13.     GOSI maintains a board of directors, who routinely approve various private and public investments and acquisitions. GOSI engages in commercial activity in the United States through its investment operations, including but not limited to the purchase of an American bank's shareholding in the Saudi American Bank.

14.     Upon further information and belief, GOSI has invested in a fund ("Fund") created by the Jeddah-based Islamic Development Bank ("IDB"). The said Fund is managed by Emerging Markets Partnership ("EMP"), which, according to its website, maintains offices in Washington, D.C. and invests the Fund's assets in U.S. equity markets.

### III.     JURISDICTION AND VENUE

15.     Jurisdiction in this Court is founded upon, among other bases, 28 U.S.C. § 1330 and the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602, *et seq.* Jurisdiction arises pursuant to 28 U.S.C. §§ 1605(a)(1), (2) or (3).

16.     Venue is appropriate in this Court under 28 U.S.C. §§ 1391(f)(4), because, *inter alia*, Defendant Saudi Arabia is a foreign state, and Defendant GOSI is an agency or instrumentality of Saudi Arabia.

17.     Both Defendants are "foreign states" as that term is defined in 28 U.S.C. § 1603.

## IV.     FACTS COMMON TO ALL COUNTS

### Major U.S. Companies and Their Employees Lead
### Economic Development in Saudi Arabia For Over Two Decades

18.     Since the earliest days of the Kingdom's 71-year existence, foreign workers have been a key element in Saudi Arabia's economy. In particular, U.S. and British companies and their workforce were largely responsible for enhancing Saudi Arabia's prosperity as briefly described in paragraphs 3-5, *supra*.

19.     During the oil boom between approximately 1970 and 1990, many foreign companies, such as Fluor Daniel and Basil Engineering, established themselves in Saudi Arabia. These companies established huge development projects, including oil exploration and production facilities.

20.     Foreign companies were able to establish themselves in Saudi Arabia either by submitting a winning contract bid to the Saudi government or by forming partnerships or participating in joint ventures with Saudi companies.

21.     During the economic blossoming of Saudi Arabia, several million foreign workers obtained work visas and left their countries of origin to work in Saudi Arabia. Foreign skilled and professional workers were badly needed. Many workers, including Plaintiff John Peterson, were enticed to Saudi Arabia by favorable employment packages, which included GOSI benefits. Employers used GOSI benefits to attract foreign workers, including Plaintiff to Saudi Arabia.

### The Mechanics of GOSI

22.     In view of the harsh living and social conditions in Saudi Arabia during the relevant

time period, GOSI was a particularly attractive aspect of employment packages for foreign workers.

23.     GOSI is divided into two separate branches: (1) Occupational Hazards Branch (insurance for employment-related injuries and disease), and (2) Annuities Branch (retirement and death benefits). Between 1969 and 1987, GOSI contributions were mandatory for private employers and their employees, regardless of national origin or citizenry.

24.     Employers were solely responsible for contributing two percent (2%) of their employees' salaries to the Occupational Hazards Branch. Contributions to GOSI's Annuity Branch were calculated as thirteen percent (13%) of the total value of an employee's wages and other benefits. Of the total required thirteen percent (13%) monetary contribution, the employee contribution was five percent (5%) and the employer contribution, made in the employee's name, was eight percent (8%). All contributions were made for the benefit of, and in the name of, the employee.

25.     GOSI invested and reinvested those contributions to the extent that the Fund had billions of dollars worth of assets. By 1987, the overwhelming majority of GOSI's assets could be attributed to foreign workers' contributions.

**The Saudi Government Cancels GOSI As To Foreign Employees Only**

26.     On or about March 10, 1987, the Saudi Government issued Royal Decree No. M/43, which excluded non-Saudi workers from GOSI's Annuity Branch ("1987 Royal Decree"). Pursuant to that Decree, non-Saudi workers would no longer be covered by the GOSI Annuity Branch.

27.     The effect of the 1987 Royal Decree was devastating for foreign workers, including Plaintiff, who had invested substantial monies in GOSI in anticipation of his retirement. As a result of this abrupt cancellation, Plaintiff fully anticipated that the GOSI contributions deposited with

GOSI in his name and on his behalf would be promptly refunded to him.

28.     From the inception of GOSI, Defendants intended to distribute GOSI benefits to Plaintiff and other non-Saudi workers in their home country – *i.e.*, their country of origin. Plaintiff and other foreign laborers were only in Saudi Arabia on a temporary basis. Saudi Arabia does not allow non-Muslims to immigrate into the country. Indeed, even Muslims would have a very difficult time obtaining permanent residence or Saudi nationality. Accordingly, Plaintiff and other foreign workers, their employers, GOSI, and the Saudi Government all understood that Plaintiff would return to the United States and that GOSI benefits would be remitted here.

29.     Upon learning of the 1987 Royal Decree, Plaintiff, who had returned to his home country, believed that his contributions to GOSI would be returned to him in the United States.

30.     Until recently, Defendants never denied that the contributions to GOSI made on behalf of Plaintiff and in his name belonged to him, and that GOSI was required to refund to Plaintiff those contributions. Defendants did endeavor to delay the refund process and to make it difficult for Plaintiff to comprehend the refund process and to seek refunds. Until recently, Defendants continued to delay paying a portion of the required refund, and only recently did it become clear that Defendants do not intend to pay the remainder of the required refund.

31.     At some point after 1987 and before 1990 (most likely in 1989), Defendants decided to refund a portion of the GOSI contribution to Plaintiff and other foreign workers. Even though Defendants knew that many of the non-Saudi workers, including Plaintiff, affected by this 1987 Royal Decree no longer resided in Saudi Arabia, Defendants made no effort to publicize the decision to refund employees GOSI contributions. Defendants relied upon the absence of information available to workers as a way to delay or circumvent the refund process.

-7-

32.     For instance, although Mr. Peterson remained in Saudi Arabia for three years following his discovery of the GOSI cancellation, he did not receive any notice from Defendants that he would be entitled to receive a refund payment for the monetary contributions already made by him and his employers.  Defendants made no effort to call the refund process to his attention or to provide information as to how he might seek a refund.

33.     Notwithstanding Defendants' failure to publicize the refund process, word of the GOSI refund process for foreign workers effectively spread, among other means, by word of mouth and media sources through the communities of expatriate workers who either formerly lived and worked in Saudi Arabia or who were still employed in Saudi Arabia.

**Defendants Implement a Partial GOSI Refund Scheme For Affected Workers**

34.     After Mr. Peterson returned to the United States (in approximately 1990), he learned from others who worked in Saudi Arabia that he was entitled to apply for a partial refund of the thirteen percent GOSI contributions made in his name.

35.     Mr. Peterson learned that he could receive a refund by sending a letter with relevant documentation to Riyadh, Saudi Arabia asking Defendants for a refund.  Mr. Peterson also learned that Defendants promised to send refund checks directly to the former Saudi-resident's country of citizenship, in this case the United States.

36.     Thereafter, Mr. Peterson applied for a refund of his GOSI contributions.  In approximately late 1990, he received a check from Defendants in the United States, which purported to represent his five percent monetary GOSI contribution plus some amount of interest payment for the delay in payment.  It was not disclosed to Mr. Peterson when his remaining eight percent contributions would be refunded.  He understood that once refunds of the employee GOSI

-8-

contributions were made, Defendants would distribute the remainder of the total GOSI contribution.

37.     Just as Defendants failed to publicize the refund program, they failed to explain their decision to first refund five percent of the contributions made on behalf of Plaintiff and other foreign workers, or to state when the remaining eight percent would be paid.

38.     Like Plaintiff Peterson, many of the other class members in the United States have received partial GOSI refunds and are awaiting the distribution of the remainder of the refund to which they are entitled.

### Defendants Deny Plaintiff a Complete Refund

39.     In an effort to rectify Defendants' failure to provide a date certain for refunding the remainder of his GOSI contributions, Plaintiff Peterson contacted Defendants at the Saudi Embassy in Washington, D.C. throughout June 2003 via telephone, electronic mail, facsimile and certified mail.  In each of his communications to Defendants, he asked for a date certain for his complete GOSI refund.  Defendants failed to provide the requested information.

40.     Mr. Peterson gave Defendants until June 23, 2003 to provide a definitive answer to his refund inquiry.  Mr. Peterson made clear in this communication that failure of Defendants to respond by June 23, 2003 would be deemed a denial of his refund claim.  To date, Defendants have not responded to Mr. Peterson and have not provided a complete refund, including an interest payment for the delay in payment.

41.     Defendants did not refund to Plaintiff Peterson, or any other class member, the total amount of the thirteen percent monetary contribution to the GOSI, including the payment of interest for the delay in making the refund.

42.     Defendants' failure to provide a total refund plus accrued interest to Plaintiff has

had a direct effect on his financial well-being in the United States. Specifically, many of the U.S. citizens who worked in Saudi Arabia for part of their professional careers are presently near or past retirement age.

## V.    CLASS ALLEGATIONS

43.    Plaintiff hereby incorporates by reference and realleges each of the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

44.    In keeping with the 1969 Royal Decree establishing the GOSI system, contributions to GOSI of thirteen percent (13%) of wages and benefits were made by or on behalf of Plaintiff and class members between 1969 and 1987.

45.    Plaintiff has properly applied to Defendants for refunds of those contributions.

46.    Defendants have refused to provide complete refunds, and instead have provided a refund of only the five percent (5%) employee contribution of the total thirteen percent (13%) required monetary contribution.

47.    It is proper for Plaintiff to be permitted to prosecute this suit on behalf of himself and others because: (1) the size of the class makes joinder of all class members impracticable, extremely difficult, and inconvenient; (2) there are questions of law and fact common to all class members; (3) the claims of Plaintiff are typical of the claims of the class; and (4) Plaintiff will fairly and adequately protect the interests of the class.

48.    Plaintiff seeks to represent the following class:

> All citizens and residents of the United States of America who: (a) were employed in Saudi Arabia between 1969 and 1987; (b) contributed (or on whose behalf employers contributed) to GOSI in Saudi Arabia; (c) properly

applied for refunds of their GOSI contributions, as directed by the Kingdom of Saudi Arabia, and (d) have received anything less than a full refund of the thirteen percent (13%) monetary contribution, including interest.

49.    The identity of each member of the class is known to the Defendants.

50.    Certification is appropriate under Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by the class members could establish incompatible standards of conduct for the Defendants.

51.    Certification is appropriate under Fed. R. Civ. P. 23(b)(2) because the Defendants have acted and/or refused to act on grounds generally applicable to the class, and Plaintiff is seeking appropriate final injunctive or corresponding declaratory relief with respect to the class as a whole.

52.    Certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to all class members predominate over any questions affecting only the individual Plaintiff such as damages or other differences that the Defendants might claim to be individual to each class member.   Common questions of fact and/or law include, but are not limited to, the following:

    a.   Whether the Defendants are immune from liability;

    b.   Whether the Plaintiff and Defendants entered into a contract;

    c.   Whether the Defendants used or employed any deception, fraud, or misrepresentation in connection with their decision to exclude Plaintiff from the benefits of the GOSI;

    d.   Whether the Defendants used or employed any deception, fraud, misrepresentation in connection with their use of GOSI as an incentive to attract badly needed foreign workers;

    e.   Whether the Defendants are liable for complete refunds of all monetary contributions

-11-

made by and on behalf of Plaintiff and class members; and

    f.    Whether equitable or injunctive relief is appropriate.

53.    Any differences in law or fact among members of the class may be reconciled in ways that do not defeat the efficiency and value of the class action to deal with so many claims in a single case. The class representatives are aware of no defenses of substance that would divide the class or distinguish its members from one another in ways that would defeat class treatment.

54.    The claims of Plaintiff are typical of the claims of all class members. GOSI's Annuity Branch was cancelled only as to Plaintiff on the basis of his non-Saudi citizenship. Plaintiff has been denied a full refund of the GOSI contributions made in his name and on his behalf. Since 1987, Saudi employees, however, have continued without interruption to contribute to GOSI and receive pension entitlements associated with their GOSI contributions.

55.    A class action is superior to any other available method for the fair and efficient adjudication of this dispute. The claims cannot be pursued without class treatment without doing substantial harm to the resources of the courts, especially when it is considered that class members are United States citizens who reside throughout the country. The court system would be sorely strained by the presence of tens of thousands of claims. Prosecution of individual claims would risk inconsistent decisions, which could only be dealt with on a class-wide basis by the use of appellate process, perhaps even in the United States Supreme Court.

56.    The Plaintiff will fairly and adequately represent and protect the interests of the class members because Plaintiff has no interest adverse to the interests of class members and has retained competent counsel. Counsel for the class representative are experienced in employment, statistical, international and class action litigation and with various courts within the state and federal systems,



including this Court.

## VI.    CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

#### (VIOLATION OF CUSTOMARY INTERNATIONAL LAW
#### ON TAKINGS AND EXPROPRIATION)

57.    Plaintiff hereby incorporates by reference and realleges each of the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

58.    Plaintiff has tangible property rights in his substantial cash investments in GOSI.

59.    Defendants' cancellation of GOSI's Annuity Branch as to Plaintiff and other non-Saudi citizens and Defendants' failure to refund to Plaintiff his total thirteen percent GOSI contribution has deprived Plaintiff of his property or rights in property.

60.    No public purpose necessitated the cancellation of GOSI for Plaintiff and other non-Saudi citizens.  The cancellation of GOSI coverage for non-Saudi workers was arbitrary and discriminatory, because it applied to Plaintiff on the basis of his non-Saudi citizenship.

61.    Defendants have retained a substantial portion of Plaintiff's GOSI contributions without paying just compensation for taking that property.

62.    Defendants' actions and omissions violate *jus cogens* norms or customary international law on expropriation.

63.    The Basic Laws of the Kingdom of Saudi Arabia ("Basic Laws") expressly recognize the customary international law regarding private property.  For example, the Basic Laws provide that: "The state protects freedom of private property and its sanctity. No one is to be stripped of his property except when it serves the public interest, in which case fair compensation is due." Further,

-13-

the Basic Laws state that: "Public confiscation of money is prohibited and the penalty of private

confiscation is to be imposed only by a legal order."

64.    In addition, the Basic Laws [enacted in 1992], codify the well-established norms and

principles of Saudi governance pursuant to Shari'a law.  Such norms and principles are found in the

Qur'an and the Sunna and were in effect at all times relevant to the allegations contained herein.

65.    Plaintiff's property is present in the United States in connection with the commercial

activity of GOSI and/or Saudi Arabia's commercial activity.  For example, in or about 1992,

Defendant GOSI bought a substantial portion of Citibank's stakes in the Saudi American Bank

("SAMBA").[1]  The deal was believed to be valued at SR1.75 billion (riyals, or Saudi currency), or

approximately $450 million in legal tender of the United States.

66.    Citibank first established a presence in Saudi Arabia in 1955.  SAMBA was formed in

the mid-1970s.  Citibank acquired a substantial shareholding in SAMBA soon thereafter.  SAMBA

currently has sixty-two branches, two hundred fifty three automatic teller machines, three Global

Investment Centers, and twenty-eight Speed Cash Centers within the Kingdom of Saudi Arabia.

67.    Additionally, Defendant Saudi Arabia has taken loans from GOSI, including but not

limited to loans for the purchase of over 60 U.S.-manufactured aircraft for Saudi Arabian Airlines.

The purchases were made through Boeing, which is headquartered in Seattle, Washington.

68.    On information and belief, GOSI has invested millions of dollars in Saudi Basic

Industries Corporation ("SABIC").  For many years, SABIC had large offices in Stamford,

Connecticut.  Recently, however, SABIC moved its U.S. headquarters to Houston, Texas.

69.    As a direct and proximate result of Defendants' actions and omissions, Plaintiff has

---

[1] *See* S. Sidahmed, *GOSI, Pension Funds Buy Citibank Shares*, MONEYCLIPS, January 27, 1992.

suffered, and continues to suffer, substantial monetary damages.

## SECOND CLAIM FOR RELIEF

## (BREACH OF CONTRACT)

70.     Plaintiff hereby incorporates by reference and realleges each of the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

71.     Plaintiff and Defendants entered into a contract (express or implied) when Plaintiff contributed a portion of his wages and benefits to the GOSI for the purpose of obtaining a pension entitlement.

72.     Defendants breached the contract by excluding Plaintiff from the GOSI system and by refusing to provide him with a refund of his full contributions.

73.     As a direct and proximate result of Defendants' breach, Plaintiff has suffered, and continues to suffer, substantial monetary damages, requiring payment of actual damages and interest for delay in making full payment.

## THIRD CLAIM FOR RELIEF

## (CONVERSION)

74.     Plaintiff hereby incorporates by reference and realleges each of the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

75.     Pursuant to law, the funds contributed to the GOSI by Plaintiff and his employers were to be held for the benefit of Plaintiff.

76.     Plaintiff has made lawful demand for the return of the monies he and his employers contributed to the GOSI on Plaintiff's behalf.

77.     Defendants have refused such lawful demands.

78.     Defendants wrongfully and intentionally exercised control over these funds by

-15-

refusing to repay them to Plaintiff.

79.     The actions of Defendants deprived Plaintiff of his possession of the funds and further deprived Plaintiff of his rights to possession of the funds.

80.     As a result of Defendants' conversion, Plaintiff has suffered, and continues to suffer, damages.

## FOURTH CLAIM FOR RELIEF

### (UNJUST ENRICHMENT)

81.     Plaintiff hereby incorporates by reference and realleges each of the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

82.     Defendants are not legally entitled to the monies contributed to the GOSI by Plaintiff and his employers on behalf of Plaintiff.

83.     Defendants have retained the benefits of Plaintiff's monies at the expense of Plaintiff and to his detriment.

84.     Defendants have been unjustly enriched by their retention of the monies contributed to GOSI by Plaintiff and his employers on behalf of Plaintiff.

85.     Such unjust enrichment entitles Plaintiff a right of recovery in equity.

## PRAYER FOR RELIEF

86.     WHEREFORE, Plaintiff prays that this Court order the following relief:

        (a)     Enter declaratory judgment against Defendants in favor of the Plaintiff and all others similarly situated that Defendants unlawfully breached its contract to refund all GOSI contributions made by Plaintiff and his employers on his behalf;

        (b)     Enter declaratory judgment against Defendants in favor of the Plaintiff and all others similarly situated that Defendants unlawfully converted the property of

-16-

Plaintiff and all others similarly situated by failing to refund all GOSI entitlement contributions made by Plaintiff and his employers on his behalf;

(c)   Enter declaratory judgment against Defendants in favor of the Plaintiff and all others similarly situated that Defendants have been unjustly enriched by retaining the GOSI entitlement contributions made by Plaintiff and his employers on his behalf;

(d)   Award to Plaintiff and others similarly situated and against Defendants just and full compensation for all GOSI contributions made by Plaintiff and his employers on his behalf, to be paid in the legal tender of the United States;

(e)   Award to Plaintiff and others similarly situated and against Defendants pre-judgment interest at an appropriate commercial rate to compensate Plaintiff and all others similarly situated for the delay by Defendants in returning GOSI entitlements;

(f)   Award to Plaintiff and others similarly situated and against Defendants post-judgment interest thereon;

(g)   Award to Plaintiff and others similarly situated and against Defendants costs and other disbursements associated with prosecution of this action; and

(h)   Award to Plaintiff and others similarly situated and against Defendants all further relief as justice may require that is proper under the facts and law.

August 2𝟙, 2003

Respectfully submitted,

**HENRICHSEN SIEGEL, P.L.L.C.**

-17-

Eric L. Siegel, D.C. Bar No. 427350
1850 M Street, N.W., Suite 250
Washington, DC  20036
(202) 293-7766
(202) 293-7778 [facsimile]

Stephen A. Saltzburg, D.C. Bar No. 156844
2000 H Street, N.W.
Washington, D.C. 20052
(202) 994-7089
(202) 994-7143 [facsimile]
Attorneys for Plaintiff

-18-