**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **JOHN W. PETERSON,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No.  03-1771 (JDB)** |
| **ROYAL KINGDOM OF SAUDI ARABIA** | |
| **and** | |
| **GENERAL ORGANIZATION OF SOCIAL INSURANCE,** | |
| **Defendants.** | |

<u>**MEMORANDUM OPINION**</u>

Presently before the Court in this action brought by plaintiff John W. Peterson against the Royal Kingdom of Saudi Arabia ("Saudi Arabia") and the General Organization of Social Insurance ("GOSI"), an instrumentality of Saudi Arabia (together "defendants"), are the motion of defendants to dismiss the complaint and the motion of plaintiff to strike or, in the alternative, for leave to file a sur-reply.  For the reasons that follow, the Court will grant defendants' motion and deny plaintiff's motion.[1]

---

[1] Plaintiff contends that defendants raise the argument that plaintiff failed to exhaust local remedies for the first time in their reply brief and that the argument should therefore be stricken or, in the alternative, plaintiff should be allowed to file a sur-reply.  The Court will deny the motion as moot, as the issue of exhaustion of remedies is neither dispositive nor relevant in the Court's resolution of defendant's motion to dismiss.

-1-

## BACKGROUND

The following facts are alleged by plaintiff.  In November 1969, Saudi Arabia established GOSI to promote foreign commerce and attract foreign workers to Saudi Arabia.  Compl. ¶ 9. GOSI is separated into two branches: the Occupational Hazards Branch and the Annuities Branch, which provides its participants with retirement benefits.  Id. ¶ 23.  GOSI invests and reinvests employer and employee contributions to its fund in various corporations, organizations, and international banks.  Id. ¶ 25.

Between 1969 and 1987, GOSI contributions were mandatory for private employers and their employees, regardless of national origin or citizenry.  Id. ¶ 23.  Employers were solely responsible for contributing two percent (2%) of their employees' salaries to the Occupational Hazards Branch.  Id. ¶ 24.  Contributions to GOSI's Annuities Branch were calculated as thirteen percent (13%) of the total value of the employee's wages and other benefits.  Id.  The employee contributed five percent (5%) and the employer contributed eight percent (8%) of the monetary contribution.  Id.  All contributions were made for the benefit of, and in the name of, the employee.  Id.

On or about March 10, 1987, the Saudi Government issued Royal Decree No. M/43, which excluded non-Saudi workers from GOSI's Annuities Branch ("1987 Royal Decree").  Id. ¶ 26.  Pursuant to that Decree, non-Saudi workers were no longer covered by the GOSI Annuities Branch.  Id.  At some point between 1987 and 1990, defendants decided to refund a portion of the GOSI contributions to foreign workers who had made contributions into the system.  Id.  ¶ 31.  Plaintiff was a foreign worker in Saudi Arabia who made contributions into the GOSI system.  In approximately 1990, plaintiff applied for a refund of his GOSI contributions and

received a check from defendants in the United States, which purported to represent his five percent monetary GOSI contribution plus some amount of interest for the delay in payment.  Id. ¶ 36.

Plaintiff alleges that defendants failed to publicize the GOSI refund program, failed to explain their decision to refund the five percent contribution, and failed to state when the remaining eight percent would be paid.  Id. ¶¶ 36-37.  Plaintiff alleges that he contacted defendants at the embassy of Saudi Arabia in Washington throughout June 2003 via telephone, electronic mail, facsimile, and certified mail.  Id. ¶ 39.  In each of his communications to defendants, plaintiff asked for a date certain by which he would receive the remaining eight percent of his GOSI refund.  Id.  Defendants failed to provide the requested information.  Id. Plaintiff stated that he would give defendants until June 23, 2003, to provide a definitive answer to his refund inquiry and that failure of defendants to respond by that date would be deemed a denial of his refund claim.  Id. ¶ 40.  Defendants did not respond to plaintiff or provide a complete refund.  Id. ¶¶ 40-41.

On August 21, 2003, plaintiff filed his complaint in this Court, asserting claims of:  (1) unlawful expropriation of plaintiff's property rights, without just, adequate, prompt compensation in violation of international law; (2) arbitrary and discriminatory treatment of foreign workers with regard to their property in Saudi Arabia; (3) breach of contract; (4) unjust enrichment; and (5) conversion of plaintiff's property and rights in property.  Defendants filed their motion to dismiss pursuant to FED. R. CIV. P. 12(b)(1), 12(b)(2), 12(h)(3), and 12(b)(6) and on act of state grounds on November 21, 2003.  A hearing on the motion to dismiss was held on July 16, 2004.

## APPLICABLE STANDARD

The Foreign Sovereign Immunities Act ("FSIA") is "the sole basis for obtaining jurisdiction over a foreign state in our courts." Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 434 (1989). The basic premise of the FSIA is that foreign sovereigns are immune from suit in the United States unless the action falls under one of the specific exceptions enumerated in the statute. 28 U.S.C. § 1604. If the foreign sovereign is not immune, the federal district courts have exclusive jurisdiction over the action. 28 U.S.C. §§1330, 1604; Daliberti v. Republic of Iraq, 97 F. Supp. 2d 38, 42 (D.D.C. 2000)(citing Amerada Hess, 488 U.S. at 434-35).

Under the FSIA, the foreign sovereign has "immunity from trial and the attendant burdens of litigation, and not just a defense to liability on the merits." Phoenix Consulting, Inc. v. Republic of Angola, 216 F.3d 36, 39 (D.C. Cir. 2000) (quoting Foremost-McKesson, Inc. v. Islamic Republic of Iran, 905 F.2d 438, 443 (D.C. Cir. 1990)). The special circumstances of a foreign sovereign require the court to engage in more than the usual pretrial factual and legal determinations. Foremost-McKesson, 905 F.2d at 449. The D.C. Circuit has noted that it is particularly important that the court "satisfy itself of its authority to hear the case" before trial. Id. (quoting Prakash v. Am. Univ., 727 F.2d 1174, 1179 (D.C. Cir. 1984)).

Once a foreign-sovereign defendant asserts immunity, the plaintiff bears the burden of producing evidence to show that there is no immunity and that the court therefore has jurisdiction over the plaintiff's claims. Daliberti, 97 F. Supp. at 42 (citations omitted). A court may dismiss a complaint brought under the FSIA only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims that would entitle him to relief. Id. (citations omitted). Once the plaintiff has shown that the foreign defendant is not immune from suit, the defendant

bears the burden of proving that the plaintiff's allegations do not bring the case within one of the statutory exceptions to immunity.  Phoenix Consulting, 216 F.3d at 40.

On a Rule 12(b)(1) motion to dismiss in an FSIA case, the defendant may challenge either the legal sufficiency or the factual underpinning of an exception. Phoenix Consulting, 216 F.3d at 40. Given that a foreign-state actor's entitlement to immunity from suit is a critical preliminary determination, the parties have the responsibility, and must be afforded a fair opportunity, to define issues of fact and law, and to submit evidence necessary to the resolution of the issues. Foremost-McKesson, 905 F.2d at 449 (citing Gould, Inc. v. Pechiney Ugine Kuhlmann & Trefimetaux, 853 F.2d 445, 451 (6th Cir. 1988)). Thus, the court must resolve the substantive immunity-law issues of section 1605 before reaching a decision on subject-matter jurisdiction. Id. (citations omitted).

If the defendant challenges the legal sufficiency of the plaintiff's jurisdictional allegations, the court should  accept the plaintiff's factual allegations as true and determine whether such facts bring the case within any of the exceptions to foreign-state immunity invoked by the plaintiff.  Id. This standard is similar to that of Rule 12(b)(6), under which dismissal is warranted if no plausible inferences can be drawn from the facts alleged that, if proven, would provide grounds for relief. Price v. Socialist People's Libyan Arab Jamahiriya, 294 F.3d 82, 93 (D.C. Cir. 2002) ("Price II"). The plaintiff need not set out all of the precise facts on which he bases his claim to survive a motion to dismiss. Id.

If the defendant challenges the factual basis of the court's jurisdiction, however, the court may not deny the motion to dismiss merely by assuming the truth of the facts alleged by the plaintiff. Phoenix Consulting, 216 F.3d at 40. Instead, the court must resolve any disputed issues

of fact, the resolution of which is necessary to a ruling upon the motion to dismiss. <u>Id.</u>; <u>Price II</u>,

294 F.3d at 90; <u>Foremost-McKesson</u>, 905 F.2d at 449. The court has "considerable latitude in

devising the procedures it will follow to ferret out the facts pertinent to jurisdiction," but it must

give the plaintiff "ample opportunity to secure and present evidence relevant to the existence of

jurisdiction." <u>Phoenix Consulting</u>, 216 F.3d at 40 (quoting <u>Prakash</u>, 727 F.2d at 1179-80). To

avoid burdening a foreign sovereign that proves to be immune from suit, however, the court

should carefully control and limit jurisdictional discovery. <u>Id.</u>; <u>Foremost-McKesson</u>, 905 F.2d at

449.

## DISCUSSION

Defendants argue that plaintiff's complaint must be dismissed because defendants are

foreign states and, under the FSIA, they are immune from the jurisdiction of this Court.

Defendants specifically maintain that no FSIA exception applies here, including the

expropriation exception and the commercial activity exception.  Even if one of the exceptions to

the FSIA were to apply, defendants contend that the act of state doctrine bars adjudication of this

case.  Finally, defendants argue that plaintiff's claims are barred by the statute of limitations.  The

Court will address each of defendants' arguments in turn.

A.     **FSIA Exceptions**

1.     **Expropriation**

The FSIA does permit foreign sovereigns to be sued for acts of expropriation.  The

expropriation exception is codified at 28 U.S.C. § 1605(a)(3) and, as relevant here, provides:

> (a) A foreign state shall not be immune from the jurisdiction of
> courts of the United States or of the States in any case . . . (3) in
> which rights in property taken in violation of international law are

in issue and that property or any property exchanged for such property is present in the United States in connection with a commercial activity carried on in the United States by the foreign state; or that property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States.

For this exception to apply, therefore, a court must find that: (i) rights in property are at issue; (ii) those rights were taken in violation of international law; and (iii) the property (or any property exchanged for it) is present in the United States in connection with a commercial activity carried on in the United States by the foreign state, or the property (or any property exchanged for it) is owned or operated by an agency of the foreign state engaged in a commercial activity in the United States.  Defendants argue that rights in property, as property is understood under section 1605(a)(3), are not at issue here and that, in any event, the property in question is not sufficiently connected to the United States as required by section 1605(a)(3).

Courts considering the expropriation exception to the FSIA have held that it only applies where the property at issue is "tangible property."  See Zappia Middle East Constr. Co. v. Emirate of Abu Dhabi, No. 94 Civ. 1942 (KMW)(AJP), 1996 WL413680 at *8 (S.D.N.Y. July 24, 1996) (section 1605(a)(3) does not apply to "intangible" right to contractual payments); Lord Day and Lord v. Socialist Republic of Vietnam, 134 F. Supp. 2d 549, 560 (S.D.N.Y. 2001); Leutwyler v. Office of Her Majesty Queen Rania al Abdullah, 184 F. Supp. 2d 277, 289 n.13 (S.D.N.Y. 2001); Hirsh v. State of Isr., 962 F. Supp. 377, 383 (S.D.N.Y. 1997); Intercontinental Dictionary Series v. deGruyter, 822 F. Supp. 662, 678 (C.D. Ca. 1993).  In plaintiff's opposition to defendant's motion, plaintiff relies on two cases – Kalamazoo Spice Extraction Co. v. Provisional Military Gov't of Eth., 616 F. Supp. 660, 663 (W.D. Mich. 1985), and West v.

Multibanco Commermex, 807 F.2d 820, 830 (9th Cir. 1987) – to contend that rights in property do not have to be tangible.  That position, however, is not well-founded.[2]  Moreover, at the motions hearing, plaintiff's counsel appeared to concede the tangibility requirement under the expropriation exception to the FISA, and instead focused on characterizing plaintiff's interest in the eight percent GOSI contribution originally made on his behalf by his employer as tangible property.  Tr. July 16, 2004 Mots. Hr'g at 34:3-6 (version available as of July 29, 2004) ("Tr.").  That position fares no better.

Plaintiff's counsel acknowledged that Peterson's GOSI contribution was, at most, an expectation interest in payment.  Tr. at 37:17-19.  Peterson could not cash the account in at any time and most likely could not borrow against it or bequeath it to his heirs.  Tr. at 35:15; 37:3-8; 38:3-6.  As defined by the courts, however, tangible property is "physical" property and does not include contract rights or the right to receive payments.  Lord Day and Lord, 134 F. Supp. 2d at 560; see Brewer v. Socialist People's Republic of Iraq, 890 F.2d 97, 101 (8th Cir. 1989) (finding that a breach of contract is not an expropriation); Sampson v. F.R.G., 975 F. Supp. 1108, 1117 (N.D. Ill. 1997) (the "right to receive payments does not constitute property").  The Court therefore concludes that the eight percent GOSI contribution, characterized by plaintiff as an

---

[2] The cited cases do not support the contention that rights in property do not have to be tangible under the expropriation exception.  In Kalamazoo, the court held that the FSIA covered the governmental seizure of fifty one percent of a company's stock in another entity because it was a "controlling interest" akin to physical assets.  616 F. Supp. at 663.  In West, the court interpreted the Second Hickenlooper Amendment to apply to intangible property but did not address the scope of the expropriation exception.  807 F.2d at 830.

expectation interest in payments, does not qualify as a right in tangible property and the expropriation exception does not apply here for that reason.[3]

The expropriation exception also requires a jurisdictional nexus between the expropriation and the United States.  Plaintiff can establish a nexus by showing that the property at issue or any property exchanged for it: (a) "is present in the United States in connection with a commercial activity carried on in the United States by the foreign state," or (b) "is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States."  28 U.S.C. § 1605(a)(3).

Plaintiff first attempts to establish that the property in question (or any property exchanged for it) is present in the United States in connection with a commercial activity carried on here by Saudi Arabia.  28 U.S.C. § 1605(a)(3).  As defendants point out, however, it is GOSI, not Saudi Arabia, that is allegedly in possession of plaintiff's "property."  While GOSI is an agency or instrumentality of Saudi Arabia, the baseline presumption in FSIA matters is that the government agency and the sovereign operate independently.  McKesson Corp. v. Islamic Republic of Iran, 52 F.3d 346, 351 (D.C. Cir. 1995).  This presumption can be overcome, and the activities of the agency attributed to the sovereign, if the "entity is so extensively controlled by its owner that a relationship of principal and agent is created."  First Nat'l City Bank v. Banco para el Comercio Exterior de Cuba, 462 U.S. 611, 629 (1983) ("Bancec") (referring to corporations controlled by foreign sovereigns).  It is plaintiff's burden to aver facts sufficient to withstand a motion to dismiss regarding the agency relationship.  See Foremost-McKesson, 905 F.2d at 44.

---

[3] Furthermore, it is doubtful that the eight percent GOSI amount could be properly considered plaintiff's property in the first instance because it was a contribution made into the GOSI system by plaintiff's employer, not by plaintiff.

Based on a review of plaintiff's pleadings, the Court concludes that plaintiff has not alleged the requisite control of GOSI by Saudi Arabia to merit disregarding GOSI's independent status from Saudi Arabia

Plaintiff also attempts to establish that GOSI itself is engaged in commercial activity in the United States. A commercial activity is "either a regular course of commercial conduct or a particular commercial transaction or act determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose." 28 U.S.C. § 1603(d). Plaintiff cites several transactions or acts by GOSI as examples of commercial activity: purchase of Citibank's shares in the Saudi American Bank, investment in a Jeddah-based Islamic Development Bank ("IDB") fund managed by American-based Emerging Markets Partnership ("EMP"), and investment in the Saudi Basic Industries Corporation that has offices in the United States. Pl.'s Compl.¶¶ 12-14, 65-68; Pl.'s Opp'n at 25. According to plaintiff, EMP then invests the IDB fund's assets in U.S. equity markets. Compl. ¶ 14.

Defendants contend that GOSI's "passive" investment in Saudi corporations that engage in business in the United States is not equivalent to active commercial activity by GOSI in the United States. Defs.' Mot. at 16-17. That position appears to have some merit. The Court need not determine, however, whether plaintiff has succeeded in establishing that GOSI has engaged in commercial activity in the United States. The fact that the property in question is not "tangible" property is, the Court concludes, dispositive of the question whether the expropriation exception of the FSIA can apply to defendants. The Court therefore holds that the expropriation exception does not apply to permit suit against defendants in the circumstances of this case.

## 2.       Commercial Activity Exception

Plaintiff argues, in the alternative, that the commercial activity exception of the FSIA

allows defendants to be sued.  The commercial activity exception permits foreign sovereigns to

be sued when they are engaging in commercial activities related to the United States.  It is

codified at 28 U.S.C. § 1605(a)(2), and provides as relevant here:

> (a) A foreign state shall not be immune from the jurisdiction of courts
> of the United States or of the States in any case . . . (3) in which the
> action is based upon a commercial activity carried on in the United
> States by the foreign state; or upon an act performed in the United
> States in connection with a commercial activity of the foreign state
> elsewhere; or upon an act outside the territory of the United States in
> connection with a commercial activity of the foreign state elsewhere
> and that act causes a direct effect in the United States.

Plaintiff brings his claims against defendants pursuant to the third prong, i.e., the "direct effect"

prong, of the commercial activity exception.  The "act" at issue is the termination of GOSI by the

1987 Royal Decree.  In order to hold defendants liable under this exception, then, plaintiff must

successfully establish that GOSI engaged in "commercial activity" when it terminated the

benefits for foreign workers in Saudi Arabia, and that the termination had a "direct effect" in the

United States.

To distinguish between a commercial[4] and a sovereign activity, the Court considers

whether a foreign government "exercises only those  powers that can be exercised by private

citizens as distinct from those powers peculiar to sovereigns." Saudi Arabia v. Nelson, 507 U.S.

349, 360 (1993) (internal quotations omitted); accord Republic of Argentina v. Weltover, 504

---

[4] Under both the commercial activity exception and the expropriation exception, a
commercial activity is "either a regular course of commercial conduct or a particular commercial
transaction or act determined by reference to the nature of the course of conduct or particular
transaction or act, rather than by reference to its purpose."  28 U.S.C. § 1603(d).

U.S. 607, 614 (1992).  In other words, "a foreign state engages in commercial activity . . . only

where it acts 'in the manner of a private player' within the market."  <u>Nelson</u>, 507 U.S. at 360

(quoting <u>Weltover</u>, 504 U.S. at 614).  A government acts in the manner of a private player if its

"particular actions" are like those of a private party involved in trade, traffic, or commerce,

irrespective of a sovereign objective or profit motive.  507 U.S. at 360-361 (quoting <u>Weltover</u>,

504 U.S. at 614).  The inquiry, therefore, focuses on the specific acts, rather than a broad

categorization of the acts.  <u>DeSanchez v. Banco Central de Nicaragua</u>, 770 F.2d 1385, 1392 (5th

Cir. 1985).

In this case, the GOSI Annuities Branch was created by Royal Decree to benefit workers

in Saudi Arabia.  Compl. ¶¶ 22-23.  It required private employers to contribute eight percent of

their employees' wages and benefits, and employees to contribute five percent.  Compl. ¶¶ 23-24.

Saudi Arabia unilaterally terminated GOSI benefits for foreign workers through the 1987 Royal

Decree.  Compl. ¶ 27.  Whatever the later status of employer contributions to GOSI after 1987, a

private player in the market certainly could not engage in the "particular actions" of initiating,

administering, and ending a scheme of mandatory social insurance.  The GOSI system is,

therefore, not "akin to" a pension plan run by a private employer, as plaintiff argues.  In fact,

plaintiff's counsel conceded as much in the motions hearing:  "I don't think . . . any private entity

could exercise sufficient authority to compel all employers to make contributions into a pension

type fund."  Tr. at 75, ll. 18-20.  Instead, plaintiff urges the Court to consider GOSI's purpose of

attracting foreign workers to Saudi Arabia in determining whether the termination of benefits for

foreign workers can be considered an act of a private player in the market.  Compl. ¶ 21.  But

section 1603(d), <u>Nelson</u>, and <u>Weltover</u>, however, all clearly define commercial activity by its

nature rather than its purpose.  Indeed, the Court is not permitted to look to the purpose of the

acts in issue here in determining whether they constitute commercial activity.  The Court,

therefore, concludes that GOSI's termination of foreign workers' social insurance benefits is an

act that is distinctly sovereign, rather than commercial, in nature.

   The Court further concludes that the termination of GOSI benefits for foreign workers did

not have a "direct effect" in the United States.  Weltover set the standard for a direct effect,

finding one where:

> Respondents had designated their accounts in New York as the place
> of payment, and Argentina made some interest payments into those
> accounts . . .  Because New York was thus the place of performance
> for Argentina's ultimate contractual obligations, the rescheduling of
> those obligations necessarily had a 'direct effect' in the United States:
> Money that was supposed to have been delivered to a New York bank
> for deposit was not forthcoming.

504 U.S. at 619.   The D.C. Circuit follows Weltover's general test: "There is no direct effect

unless payment was 'supposed' to have been made in the United States . . . ."  Global Index, Inc.

v. Mkapa, 290 F. Supp. 2d 108, 113 (D.D.C. 2003); see Goodman Holdings v. Rafidain Bank, 26

F.3d 1143, 1146-1147 (D.C. Cir. 1994); Croesus EMTR Master Fund L.P. v. Brazil, 212 F.

Supp. 2d 30, 36 (D.D.C. 2002); see also I.T. Consultants, Inc. v. Islamic Republic of Pak., 351

F.3d 1184, 1189 (D.C. Cir. 2003).  In theory, the "supposed" to standard does not require express

designation of payment in order to find a direct effect, but in fact, "in almost every case, in this

circuit and others, involving the direct effect exception, the existence or absence of an expressly

designated place of payment has been decisive."  Global Index, 290 F. Supp. 2d at 113.  Courts

have been willing to find a direct effect when a contract does not specify a place of payment ex

ante, but expressly permits the parties to designate one ex post, and both parties ultimately agree

on the designation.  Id. at 115; see Weltover, 504 U.S. at 609-10 (finding direct effect where bonds allowed for payment in London, Frankfurt, Zurich, or New York by the choice of the creditor and the creditor chose New York when the bonds were due); Croesus, 212 F. Supp. 2d at 37 (rejecting direct effect where the party demanded payment of bonds in the United States but it is "mere conjecture" that the party would have designated the United States as the place of payment and Brazil would have accepted the designation).  However, the D.C. Circuit has not found a direct effect based on "an implied or constructive agreement to pay in the U.S."  Global Index, 290 F. Supp. 2d at 115.

Peterson has failed to establish that his GOSI refund was "supposed" to have been sent to him in the United States.  In fact, he received his one and only GOSI refund check in Saudi Arabia and cashed it in Jeddah, Saudi Arabia, on December 25, 1988.  Defs. Mot. to Dismiss, Att. 1 at 2.  Plaintiff does not claim that GOSI expressly permitted him to designate a place of payment for his refund and then agreed to his designation.  At most, Peterson asserts that "plaintiff and other foreign workers, their employers, GOSI, and the Saudi Government all understood that Plaintiff would return to the United States and that GOSI benefits would be remitted here," Compl. ¶ 28 (emphasis added), and Peterson "believed" that he would be paid in the United States, id. ¶ 29.  At the motions hearing, counsel for plaintiff contended that plaintiff had a reasonable expectation that the money would be paid in the United States, but also acknowledged that the payment could have been made somewhere else other than the United States.  As in Croesus, "the Court is left with mere conjecture" that GOSI payments were "supposed" to be paid to Peterson in the United States.  212 F. Supp. 2d at 36-37.  Based on the record before the Court, it appears that, to the extent Peterson expected a refund of his GOSI

contributions in a particular place, it can at most be described as an implied agreement for payment in the United States.  That is not enough.

The Court concludes that defendants are not excepted from the protection afforded by the FSIA under the commercial activity exception either.  The termination of GOSI benefits for foreign workers is a sovereign, not a commercial, act and the termination cannot be understood to have had a "direct effect" in the United States as required for application of the commercial activity exception in section 1605(a)(2).

**B.      Act of State Doctrine**

Defendants also raise the act of state doctrine as a defense, in the event that either of the exceptions to the FSIA were found to apply.[5]  The act of state doctrine permits courts to avoid passing judgment on foreign sovereigns in order to preserve comity between nations.  The Supreme Court first articulated the doctrine in <u>Underhill v. Hernandez</u>, 168 U.S. 250, 252 (1897): "every sovereign state is bound to respect the independence of every other sovereign State, and the courts of one country will not sit in judgment on the acts of the government of another, done within its own territory."  Because the Court concludes that neither the expropriation nor the commercial activity exception to the FSIA applies in this case, the application of the act of state doctrine, or exceptions therefrom, need not be reached here.

_____

[5] If the expropriation exception applied, however, the Second Hickenlooper Amendment, 22 U.S.C. § 2370(e)(2) (1960), would prevent defendants from availing themselves of the protection of the act of state doctrine.  The Second Hickenlooper Amendment, passed to overturn the Supreme Court's decision in <u>Banco Nacional de Cuba v. Sabbatino</u>, 376 U.S. 398 (1964), states: "notwithstanding any other provision of law, no court in the United States shall decline on the ground of the federal act of state doctrine to make a determination on the merits giving effect to the principles of international law in a case in which a claim of title or other right to property is asserted by any party including a foreign state."  The Second Hickenlooper Amendment does not create a similar bar for cases in which the commercial activity exception applies.

C.      **Statute of Limitations**

Defendants also argue that plaintiff's claims must fail because they are time-barred. Peterson filed his complaint in this case on August 21, 2003.  The basis for his claims, the issuance of the 1987 Royal Decree, is alleged to have taken place in March 1987.  Compl. ¶ 26. Defendants propose applying a three year statute of limitations, pursuant to D.C. Code § 12-301, to plaintiff's claims.  Regardless of which substantive law the Court applies, plaintiff's claims fail independently because they are barred under any applicable statute of limitations; more than sixteen years passed between issuance of the Royal Decree in 1987 and the filing of this action in 2003.

Plaintiff argues that his claims should be allowed pursuant to the lulling doctrine, which excepts actions that would otherwise be barred by the statute of limitations when the defendant "has done anything that would tend to lull the plaintiff into inaction, and thereby permit the limitation prescribed by the statute to run."  East v. Graphic Arts Indus. Joint Pension Trust, 718 A.2d 153, 156-157 (D.C. 1998).  Plaintiff contends that defendants lulled him into inaction for sixteen years by telling him that his claim for the eight percent GOSI employer contribution was being resolved.  There is no evidence, however, to support this contention.

Along with the check for Peterson's five percent refund from GOSI, which he cashed in December 1988, GOSI provided a printed notice in both Arabic and English that stated in reference to plaintiff's "request for [his] Social Insurance entitlements due for [his] insurance period" prior to the Decree:  "Attached is a check for the value of your entitlements . . . .  This payment represents your full dues from GOSI."  Defs.' Mot. to Dismiss, Att. 1 at 5.  Furthermore, in his declaration, Peterson states that he applied for the refund of his five percent GOSI

contribution "[a]fter 1987," and inquired about the process for applying for the refund of the additional eight percent employer contribution in May 2003.  Peterson does not cite any specific communications between himself and the Saudi government between his application for the refund of his entitlements (prior to December 1988) and May 2003.  Pl.'s Opp., Ex. 2 at 1-2. Plaintiff's counsel argued at the motions hearing that there was a point person at the Saudi Embassy for GOSI claims, and proffered this as evidence of lulling by defendants.  Tr. at 42, ll. 23-24.  However, the mere existence of a point person at the Saudi Embassy to receive inquiries is not evidence of activity by defendants that can constitute lulling plaintiff into inaction for well over a decade with regard to seeking the remainder of his GOSI benefits.  The Court therefore concludes that plaintiff's claims are also barred by the statute of limitations.

## CONCLUSION

For the foregoing reasons, the Court will grant defendants' motion to dismiss plaintiff's complaint and deny plaintiff's motion to strike or, in the alternative, for leave to file a sur-reply. A separate order accompanies this memorandum opinion.

            /s/  John D. Bates
            JOHN D. BATES
            United States District Judge

Dated:    August 23, 2004

Copies to:

Eric Lee Siegel
HENRICHSEN SIEGEL, PLLC
1850 M Street, NW
Suite 250
Washington, DC 20036
(202) 293-7766
Fax : (202) 293-7778
Email: esiegel@hslawyers.com

Stephen A. Saltzburg
GEORGE WASHINGTON UNIVERSITY LAW SCHOOL
2000 H Street, NW
Washington, DC 20052
(202) 994-7089
Fax : (202) 994-7143
                    *Counsel for plaintiff*

Benjamin Thomas Peele, III
BAKER & MCKENZIE
815 Connecticut Avenue, NW
Suite 900
Washington, DC 20006
(202) 452-7035
Fax : (202) 452-7074
Email: thomas.peele@bakernet.com

John F. Hundley
BAKER & MCKENZIE
815 Connecticut Avenue, NW
Washington, DC 20006
(202) 452-7018
Fax : (202) 775-8702
                    *Counsel for defendants*